### LAWRENCE, SON & GERRISH v. UNITED STATES.

(Circuit Court, S. D. New York. December 23, 1903.)

#### No. 3,297.

1. CUSTOMS DUTIES—VALUATION OF FOREIGN COINS—DATE OF EXPORTATION—CONSULAR CERTIFICATION—CLERICAL ERROR.

Section 25, Tariff Act Aug. 28, 1894, c. 349, 28 Stat. 552, in providing for the estimation of the value of foreign coins in money of the United States, prescribes that "the date of the consular certification of any invoice shall for the purposes of this section be considered the date of exportation." *Held*, that this provision is not mandatory; also, where the date of con-sular certification of an invoice was several weeks later than the true date of exportation, which was also stated in the invoice, this discrepancy being due to the shippers' error in not presenting the invoice to the consul until after exportation, *held*, that the actual time of exportation, and not of consular certification, should, for the purposes of said section, be con-sidered the date of exportation.

2. SAME—PLACE OF EXPORTATION.

Merchandise bought in Canton was shipped by junk to Hong Kong, for transshipment to a vessel that sailed to the United States several weeks later. The invoice was certified by the United States consul at Canton. *Held*, that Canton was the place of exportation.

3. SAME—DATE OF EXPORTATION—CONSULAR CERTIFICATION.

The date of consular certification of an invoice is only prima facie evi-dence of the date of exportation, and the presumption arising therefrom is rebuttable.

Application of Lawrence, Son & Gerrish, importers, to review a decision of the Board of General Appraisers which affirmed the assess-ment of duty by the collector of customs at the port of New York.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for im-porters.

Henry C. Platt, Asst. U. S. Atty.

HAZEL, District Judge. The importers and appellants protest be-cause of an erroneous valuation upon 350 rolls of Chinese floor matting, shipped, according to appellants, from Canton, August 21, 1900, to Hong Kong, where the merchandise was transshipped on August 29th to the sailing vessel Norwood, then taking on cargo and destined for New York. She did not complete her cargo until September 30th, on account of delays which were apparently not unusual for sailing vessels at that port. She cleared October 2d, arriving in New York some time in January, 1901. The consular invoice for the importation in question was not procured from Canton until eight days after the departure of the ship, viz., October 10th. The entry was appraised under para-

graph 333, Tariff Act July 24, 1897, c. 11, § 1, Schedule J, 30 Stat. 180, [U. S. Comp. St. 1901, p. 1662] which provides for payment of a duty upon such matting of 3 cents per square yard upon a valuation of not exceeding 10 cents per square yard, and 7 cents per square yard and 25 per cent. ad valorem upon a valuation of exceeding 10 cents per square yard. The merchandise was bought in Canton, and the invoice expressed its valuation in Mexican dollars, necessitating estimation by the collector of the port in the money of the United States under the provision of section 25, Tariff Act 1894 (Act Aug. 28, c. 349, 28 Stat. 552), requiring a quarterly proclamation by the Secretary of the Treasury of the values of foreign coins expressed in money of the United States. This was not repealed by the tariff act of 1897, and applies in this instance. The proclamation of the Secretary of the Treasury, dated July 1, 1900, estimated the value of the Mexican dollar at $.476. Such, then, was its value in current money of the United States for the purposes of this case, provided the exportation of the merchandise was from Canton at the period of time claimed by the importers. On October 1, 1900, the Secretary of the Treasury made another proclamation, in accordance with law, in which the value of the Mexican dollar was estimated at $.49 in current money of the United States. On the arrival of the ship at the port of New York, the merchandise was appraised at the value of 2,898 Mexican dollars, or $1,420 in current money of the United States, based upon the figure of the later proclamation. If the amount of invoice in Mexican money had been converted at the value of $.476 per dollar, as estimated in the proclamation of July 1st, the importation would have been of the value of $1,379.45, and accordingly the value per square yard would have been less than 10 cents, and hence the assessable duty only 3 cents per square yard. The appraisers, however, held that, the merchandise having been shipped for exportation from Hong Kong subsequent to the later proclamation, and the consular invoice being subsequent thereto, the value of the importation was upon that ratio of value properly fixed at 10 cents per square yard, and dutiable at 7 cents per square yard and 25 per cent. ad valorem. The tariff act, pursuant to which proclamation was made by the Secretary of the Treasury, provides that the date of the consular certification of any invoice shall, for the purposes specified, to wit, the estimation of the value of foreign coin, be the date of exportation. The theory of the government is that the provision referred to is mandatory, and that the appraisement must be made relative to the period of exportation as fixed by the date of the consular invoice; that as the ship actually sailed on October 2d, the date of consular certification being subsequent thereto, the status of the merchandise, as to its value or estimation of duties, became fixed and determined on the day that the ship sailed from the port of Hong Kong, from which port the shipment of the matting was made. I do not think that this theory is substantiated by the facts. The consular certificate, though dated October 10, 1900, subsequent to the departure of the vessel from Hong Kong, indubitably shows that the shipment of matting was from Canton on August 21st. The fact that there was no bill of lading issued at Canton does not disturb this view. The statement of the Acting Secretary of the Treasury, dated

Washington, October 10, 1901, admitted by both sides to be a correct statement of facts, says:

"It appears that the goods were actually shipped from Canton to Hong Kong on August 21, 1900, by native junk; that it was not customary among the Chinese at Canton to issue for the short voyage to Hong Kong any bill of lading or similar document, but only a shipping memorandum, which is returned to the junk on delivery of the goods in Hong Kong. In the present case the merchandise was put on board the Norwood on or about August 21, 1900, the date of the receipt signed by the mate. It further appears that sailing vessels generally take from 40 to 60 days to load, and this explains why the Norwood, which began loading in August, only completed her cargo on or about September 30th. * * * It is stated by Messrs. Siemssen & Co.: 'On revising the documents concerning our shipment per sailing vessel Norwood after the ship's departure, we found that it had been overlooked to make out the consular invoice for the rolls of matting, which was done on October 10th, and we made a note on the invoice, saying that the goods had been shipped on August 21st.'"

I conclude from this statement of the facts that the exportation of the merchandise in question was on August 21, 1900, from Canton, a foreign port, to the United States, via Hong Kong, a British port. The consular invoice executed at Canton is also persuasive of this finding. The date of exportation being established, the date of consular certification in this particular case is immaterial, and may be either at the time of shipment or later. Section 25 of the act of 1894 cannot be held to solely govern, but must be read in connection with section 19, Customs Administrative Act (Act June 10, 1890, c. 407, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924]). In the statement of the Acting Secretary of the Treasury, it is explained that the consular certification was not dated prior to October 1st, owing to an error, mistake, or inadvertence on the part of the shipper. By article 1257 of the treasury regulations it is substantially provided that, in the absence of the usual proof showing the date of exportation from a foreign port, other evidence of the fact may be taken into consideration by the appraisers. A request by the importers made upon the treasury department for the issuance of a replace invoice was denied on the ground of laches by the shippers in not procuring a consular certification, and on the further ground that the merchandise was shipped from Hong Kong to the United States, and not from Canton. The date of consular certification is only prima facie evidence of the date of exportation. The presumption arising from the date of issuance is overcome by convincing facts that the actual shipment to the United States was from Canton on August 21st, as above stated. In my opinion, a fair and reasonable interpretation of section 25 is that no date subsequent to the issuance of the consular certification shall be considered as the date of exportation for the purpose of computing the value of foreign currency in the currency of the United States. Such a construction would not, I think, preclude receiving evidence that the consular certification was not dated earlier through error or mistake, where, as a fact, the actual exportation was earlier than stated in the consular certification. The cases cited by the government, namely, Sampson v. Peaslee, 20 How. 571, 15 L. Ed. 1022, and Irvine v. Redfield, 23 How. 170, 16 L. Ed. 418, holding that the day of sailing of the vessel from a foreign port is the true period

of exportation, would seem to support this contention, the court being of the opinion that the exportation was from Canton.

The decision of the Board of General Appraisers is reversed. So ordered.